UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARY LEVY, | CASE NO. C23-1678JLR |
| Plaintiff, | ORDER |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant Google LLC's ("Google") (1) motion for summary judgement and (2) motion to continue trial date.  (MSJ (Dkt. # 32); Reply (Dkt. # 75); MCT (Dkt. # 83).)  *Pro se* Plaintiff Gary Levy opposes the motion for summary judgment.  (Resp. (Dkt. # 68).)  The court has considered the parties' submissions, the

1  relevant portions of the record, and the applicable law.  Being fully advised,[1] the court

2  GRANTS Google's motion for summary judgment and DENIES as moot Google's

3  motion to continue trial date.

## II.    BACKGROUND

5       This case arises from Google's termination of Mr. Levy's employment.  (*See*

6  *generally* Compl. (Dkt. # 1-1).)  Google employed Mr. Levy as a manager in the

7  "augmented reality and virtual reality space" from approximately December 2017 until

8  March 31, 2023.  (Fredrickson Decl. (Dkt. # 35) ¶ 2, Ex. 1 ("Levy Depo.") at 69, 71; *see*

9  *also id*. ¶ 23, Ex. 22 ("Termination Notice").)  Mr. Levy reported to Vikram Natarajan,

10  Director of Partnerships.  (Levy Depo. at 74.)  Starting in 2020, Mr. Levy assisted with a

11  partnership between Google and VeriSilicon, Inc. ("VSI") to co-design two silicon chips

12  for an augmented reality headset.  (*See* Jordan Decl. (Dkt # 33) ¶ 3; *see also* Levy Depo.

13  at 81-82.)

14       In November 2022, Mr. Levy's team began reviewing its 2022 and 2023 budget

15  for the partnership with VSI.  (*See* Jordan Decl. ¶ 4.)  In late 2022, after a Google team

16  member noticed a discrepancy between the budget figures Mr. Levy provided and the

17  budget figures in the budget sheets, Google convened a series of meetings.  (*Id*. ¶¶ 4-6.)

18  During the course of these meetings, Google learned that VSI had begun work on one of

19  the chips without having any contract documents in place.  (*See* Cunningham Decl. (Dkt.

---

21       [1] Google requests oral argument and Mr. Levy does not.  (*See* MSJ. at 1; Resp. at 1.)  The

22  court concludes that oral argument would not aid in its disposition of the motion.  *See* Local
Rules W.D. Wash. LCR 7(b)(4).

# 34) ¶ 3.)  On November 29, 2022, Google asked Mr. Levy to provide information about the budget discrepancy.  (*See* Frederickson Decl. ¶ 5, Ex. 4 ("Family Emergency Email") at 1 (discussing the VSI budget review).)  Rather than provide the requested information, Mr. Levy shared that he had a family medical emergency and could not provide the requested information or participate in any meetings scheduled that day.  (*See id*. at 2.)  By December 5, 2022, Mr. Levy had returned to work.  (*See* Frederickson Decl. ¶ 9, Ex. 8.)  On December 9, 2022, Mr. Levy and Darren Ward, Senior Director of Global Supply and one of Mr. Levy's supervisors at Google, discussed on a call Mr. Levy's health issues and plans to take leave from work effective that day.  (*See* Frederickson Decl. ¶ 14, Ex. 13 ("Ward Depo.") at 78-79; *see also id*. ¶ 15, Ex. 14 ("Ward HR Email") at 1.)  Mr. Ward represents that, during their call, Mr. Levy purportedly made a threat that Mr. Ward believed was directed at Mr. Natarajan.  (*See* Ward Depo. at 78-79.)

On December 12, 2022, Mr. Levy's team met to discuss the best method of recording contract payments to VSI.  (*See* Jordan Decl. ¶ 8.)  During the meeting, Mr. Levy disagreed with other members of the team about how best to calculate payments to VSI for work performed.  (*Id*.)  As he left the meeting, Mr. Levy claimed "protection as a Sarbanes-Oxley whistleblower."  (*Id*.)  That evening, (1) Mr. Levy sent a cryptic email to Augmented Reality Senior Director Shahram Izadi entitled "HELP" that stated, "Please help. Please send mobile" and included Mr. Levy's phone number, (Frederickson Decl. ¶ 12, Ex. 11 ("Izadi Email"); (2) Mr. Ward contacted Google's human resources team to discuss Mr. Levy's behavior and report the purported threat Mr. Levy made against Mr. Natarajan during their December 9, 2022 phone call, (*see generally* Ward HR Email);

1    and (3) Mr. Levy filed a complaint with Google alleging financial fraud pertaining to the

2    deal between Google and VSI, (Fredrickson Decl. ¶ 13, Ex. 12 ("Financial Fraud Ticket")

3    at 1).  On December 13, 2022, the Google Security Operations Center ("GSOC") reported

4    to Mr. Ward and Mr. Natarajan that it had performed a well-being check on Mr. Levy and

5    that Mr. Levy confirmed, during the check, that he was on leave until February 14, 2023.

6    (*See* Frederickson Decl. ¶ 17, Ex. 16 ("GSOC Email") at 2.)

7        Between August and October 2022, Google conducted annual performance

8    reviews of its employees during which it assigned "GRAD" ratings—a form of employee

9    performance review.  (*See* Ward Depo. at 45.)  During this period, Mr. Natarajan and Mr.

10   Ward attempted to give Mr. Levy a lower performance review rating, referred to at

11   Google as a "Not Enough Impact" rating.  (*Id*. at 154-55; *see also* Frederickson Decl.

12   ¶¶ 18-19, Exs. 17-18 ("Not Enough Impact Emails") (describing Mr. Levy's managers'

13   unsuccessful attempt to give him a "Not Enough Impact" rating during his 2022

14   performance review).)  On December 27, 2022, Google denied the request because such a

15   rating (1) first requires a support check-in[2] and (2) cannot be assigned to a Google

16   employee currently on leave.  (*See* Not Enough Impact Emails.)

17       Beginning in January 2023, Google conducted a company-wide reduction in force

18   ("RIF") and terminated the employment of 12,000 employees.  (*See* Frederickson Decl.

19   ¶ 22, Ex. 21 ("RIF Criteria") (listing the employees selected for layoff and the selection

20

21       ───────────────────

         [2] The parties dispute whether Mr. Natarajan and Mr. Levy had a support check-in

22   meeting on December 7, 2022, prior to the start of Mr. Levy's leave.  (*See* Levy Depo. at 188-89;
     *see also* Fredrickson Decl. ¶ 4, Ex. 3 ("Support Check-In Email") at 1.)

criteria); *see also id*. ¶ 21, Ex. 20 ("Corrales Depo.") at 108-09, 114 (describing how Google determined which decisional units[3] and employees would be terminated during the layoff).)  Google asserts that it selected employees for termination based on their location, historic performance, and skill set, but did not incorporate into the decision any assessment of performance as determined by the GRAD rating process.  (*Id*. at 109; *id*. at 122 ("We were very specifically instructed to ignore GRAD ratings."); *see also* Ward Depo. at 143-44 (describing Mr. Ward's knowledge of the timing of and selection criteria for the January 2023 RIF).)  On January 20, 2023, Google notified Mr. Levy that his position had been eliminated, effective March 31, 2023, as part of the RIF.  (*See* Termination Notice.)  Forty-three of 46 employees in Mr. Levy's decisional unit were selected for layoff.  (*See* RIF Criteria.)

On October 3, 2023, Mr. Levy filed a complaint against Google in King County Superior Court seeking damages and bringing claims for (1) retaliation under Washington's Silenced No More Act ("SNMA"), RCW 49.44.211(3); (2) wrongful termination in violation of public policy; and (3) interference under the Washington Paid Family and Medical Leave Act ("WPFMLA"), RCW 50A.40.010.  (*See* Compl. ¶¶ 4.1-4.21.)  Google removed the action to this court on November 2, 2023.  (*See* Not. of Removal (Dkt. # 1).)  On August 29, 2025, Google filed the instant motion for summary judgment as to all of Mr. Levy's claims.  (*See generally* MSJ.)

---

[3] "A decisional unit is a group of an organization's employees who were considered for layoff."  (*See* MSJ at 9.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# III.    ANALYSIS

The court first addresses the legal standard for awarding summary judgment and then considers Google's motion.

## A.    Legal Standard

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985).  A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id*.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the movant seeks summary judgment on a claim or defense on which the nonmovant bears the burden of persuasion at trial, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses.  *Id.* at 1103.  If the nonmoving party does not produce evidence to

1    show a genuine issue of material fact, the moving party is entitled to summary

2    judgment. *Celotex Corp.*, 477 U.S. at 323.

3        "The court must view the evidence in the light most favorable to the nonmovant

4    and draw all reasonable inferences in the nonmovants favor." *City of Pomona v. SQM N.*

5    *Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citing *Clicks Billiards, Inc. v.*

6    *Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)).  However, the party opposing

7    summary judgment must direct the court's attention to "specific, triable facts." *S.*

8    *California Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (citation

9    omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's

10   position" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at

11   252.  "Where the record taken as a whole could not lead a rational trier of fact to find for

12   the nonmoving party, there is no genuine issue for trial." *City of Pomona*, 750 F.3d at

13   1049-50 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

14   (1986)).

15   **B.    Silenced No More Act**

16        Google first moves for summary judgment on Mr. Levy's claim that Google

17   violated the SNMA "by retaliating against him for submitting complaints of financial

18   fraud, Sarbanes-Oxley violations, and legal non-compliance." (MSJ at 12 (citing Compl.

19   ¶¶ 4.2-4.3).)  The court concludes that Google has shown that it is entitled to summary

20   judgment on Mr. Levy's SNMA claim.

21        To state a claim for a violation of the SNMA, Mr. Levy must prove that Google

22   terminated his employment because he discussed or disclosed conduct that he

reasonably believed to be illegal harassment, illegal discrimination, illegal retaliation, wage and hour violations, or sexual assault, that is recognized as illegal under state, federal, or common law, or that is recognized as against a clear mandate of public policy[.]

RCW 49.44.211(3). Google argues that the SNMA applies only to "illegal harassment, illegal discrimination, illegal retaliation, wage and hour violations, or sexual assault" that is *either* illegal under state, federal, and common law *or* that violates a clear mandate of public policy. (MSJ at 12.) Thus, according to Google, Mr. Levy's claim that he was terminated for reporting financial fraud is not cognizable under the SNMA. (*Id.*) In response, Mr. Levy argues that because financial fraud is illegal under state and federal law, reporting it "falls within the SNMA's protective scope as conduct[] that is against a clear mandate of public policy." (Resp. at 29.) The court agrees with Google that the SNMA applies only to the disclosure or discussion of the types of unlawful conduct expressly enumerated in the statute, and not more generally to conduct that violates public policy. Because Mr. Levy's claim relates to disclosure of financial fraud, rather than one of the subjects governed by the statute, Mr. Levy is not entitled to protection under the SNMA. Therefore, the court grants Google's motion for summary judgment on Mr. Levy's SNMA claim.

## C.    Wrongful Termination in Violation of Public Policy

Google also moves for summary judgment on Mr. Levy's claim that Google terminated his employment in violation of public policy because he reported "financial

1    fraud, illegal behavior, Sarbanes[-]Oxley violations, and legal non-compliance." (MSJ at

2    15 (citing Compl. ¶ 4.14).[4])

3        A burden-shifting framework governs claims for wrongful termination in violation

4    of public policy. *Martin v. Gonzaga Univ.*, 425 P.3d 837, 844 (Wash. 2018). Mr. Levy

5    must first establish a *prima facie* case that (1) his "'discharge may have been motivated

6    by reasons that contravene a clear mandate of public policy[,]'" and (2) his

7    "public-policy-linked conduct was a 'significant factor'" in Google's decision to

8    terminate his employment. *Id*. (citations omitted). If he succeeds in establishing a *prima*

9    *facie* case, the burden shifts to Google to produce evidence supporting "a legitimate

10   nonpretextual nonretaliatory reason for [Mr. Levy's] discharge[.]" *Id*. Finally, if Google

11   meets this burden, Mr. Levy bears the final burden of showing either that Google's

12   reason is pretextual or that his public-policy-linked conduct was nevertheless a

13   substantial factor motivating Google to terminate his employment. *Id*.

14       Google argues that Mr. Levy cannot establish a *prima facie* case of wrongful

15   termination because he fails to demonstrate that his public-policy-linked conduct was a

16   "significant factor" in Google's decision to terminate his employment and, even if he

17   could establish such a case, Mr. Levy cannot show that Google's explanation for the

18   termination was pretextual. (MSJ at 18-20.) In response, Mr. Levy asserts that he

19   satisfies the second element of the *prima facie* case and that Google's reason for his

20

21       ――――――――――――
         [4] As pleaded, Mr. Levy's wrongful termination claim pertains only to his report of

22   financial fraud and is not based on alleged violations of the WPFMLA. (*See* Compl. ¶¶ 4.9-
     4.15.)

1   termination is pretextual.  (Resp. at 17.)  The court concludes that Google is entitled to

2   summary judgment on Mr. Levy's claim for wrongful termination in violation of public

3   policy.

4          The court begins with the *prima facie* case.  Google avers that Mr. Levy cannot

5   establish a *prima facie* case because he lacks evidence that his "public-policy-linked

6   conduct was a 'significant factor' in the decision" to terminate his employment.[5]  (*See*

7   *Martin*, 425 P.3d at 844; MSJ at 18-20.)  It is undisputed, however, that Mr. Levy

8   submitted an internal ticket with Google alleging financial violations; that Mr. Levy

9   asserted during a meeting that he was a Sarbanes-Oxley whistleblower; and that Google

10  terminated his employment shortly thereafter.  (*See* Financial Fraud Ticket (setting forth

11  that Mr. Levy filed an internal report at Google asserting financial violations on

12  December 12, 2022); *see* Jordan Decl. ¶ 8 (stating that Mr. Levy claimed "protection as a

13  Sarbanes-Oxley whistleblower" during a December 12, 2022 meeting); *see* Termination

14  Notice (notifying Mr. Levy on January 20, 2023, of his imminent layoff)); *see Kama v.*

15  *Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) ("Temporal proximity can support . . . a

16  *prima facie* case of retaliation[.]") (citation omitted).  Viewing this evidence in the light

17  most favorable to Mr. Levy, the court concludes that Mr. Levy has met his initial burden

18  to establish a *prima facie* case that his financial fraud complaint was a significant factor

19  in Google's decision to terminate his employment.

20

21

22          [5] For the purposes of its motion, Google does not argue that Mr. Levy cannot establish
    the first prong of the claim.  (*See* MSJ at 18 n.12.)

1    The second step of the burden-shifting framework requires Google to provide a

2    legitimate reason for Mr. Levy's termination and to produce evidence supporting its

3    theory.  *See Martin*, 425 P.3d at 844.  Here, Google has produced evidence that it

4    terminated Mr. Levy's employment as part of a company-wide RIF and that Mr. Levy's

5    complaint played no role in the decision to terminate his employment.  (*See, e.g.*,

6    Corrales Depo. at 108-109, 114 (setting forth Google's timeline and approach to selecting

7    employees for layoff); *see also* Termination Notice (setting forth the reason for Mr.

8    Levy's termination).)  Mr. Levy concedes that Google has met its burden at the second

9    step.  (*See* Resp. at 16.)

10    At the third step, Mr. Levy asserts that Google's reason for terminating him is

11    pretextual because (1) Google continued its partnership with VSI; (2) Google had

12    structural defects in its RIF process; (3) Google purportedly fabricated evidence of a

13    December 2022 support check-in meeting; and (4) Mr. Ward was biased against him and

14    acted to proximately cause his termination.  (Resp. at 17-25).  Mr. Levy fails to present

15    "both specific and substantial" evidence supporting any of these theories of pretext.

16    *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *Godwin*

17    *v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)); *see id*. at 1061 ("[T]his court

18    has refused to find a 'genuine issue' where the only evidence presented is

19    'uncorroborated and self-serving' testimony.") (citation omitted).

20    1.    Post-Termination Work Continuation

21    First, Mr. Levy argues that Google's reason for terminating him is pretextual

22    because Google held a series of meetings pertaining to the continuation of his work at

1    Google and to address issues that he identified regarding the VSI deal prior to his

2    departure.  (*See* Resp. at 17-18.)  Purporting to quote *Diaz v. Pan American World*

3    *Airways, Inc.*, 759 F.2d 464 (5th Cir. 1985), Mr. Levy asserts that (1) "the continuation of

4    plaintiff's work post-termination is dispositive proof that the position was not

5    eliminated[,]" and (2) "evidence that the position still existed after the plaintiff was

6    terminated is strong evidence of pretext[.]"  (Resp. at 13, 17.)  Mr. Levy, however,

7    provides an incorrect citation for *Diaz*, and the case does not include the quoted

8    language; to the contrary, it does not address pretext at all.  *See generally Diaz v. Pan*

9    *Am. World Airways, Inc.*, 442 F.2d 385 (5th Cir. 1971) (discussing the bona fide

10   occupational qualification defense to a Title VII discrimination claim).[6]  Furthermore,

11   Mr. Levy presents no evidence supporting his argument.  Mr. Levy instructs the court to

12   review "Exhibit [X]" and "Exhibit [Y]" for evidence of such meetings, but these exhibits

13   were not included with his response and do not exist in the record.[7]  (*See* Resp. at 12-13;

14   *see generally* Dkt.)

15   ───────────────

16       [6] In its reply, Google notes that Mr. Levy's opposition brief cites several cases that "do
     not exist based on the citations provided" and includes "parentheticals and quotations to cases

17   [that] do not exist in the cited cases themselves."  (Reply at 2.)  The court has also identified
     several such citations in Mr. Levy's brief.  The court puts Mr. Levy on notice that such behavior

18   will not be tolerated and could result in sanctions.  The court is mindful of Mr. Levy's *pro se*
     status, but being a *pro se* litigant does not justify or excuse misconduct of this nature.

19       [7] After Mr. Levy submitted his response, the court ordered Mr. Levy to "file a declaration
     that includes the exhibits he cites in his response brief[.]"  (11/18/25 Order (Dkt. # 69) at 2 (so

20   ordering).)  In response, Mr. Levy timely filed a single exhibit labled "Exhibit 63-1-
     'Clawback[.]"  (Dkt. # 70; *see also* 12/3/25 Order (addressing Mr. Levy's submission and

21   rejecting any late-filed submissions in support of Mr. Levy's opposition to Google's motion).)
     Mr. Levy does not cite "Exhibit 63-1-Clawback" in his opposition and it is not clear to the court

22   how this exhibit supports the arguments contained therein.  Furthermore, he did not submit any
     of the exhibits he refers to or lists in his brief with his opposition.  (*See generally* Dkt.; *see also*

1    Mr. Levy also asserts that the temporal proximity between his financial fraud

2    complaint and his termination, "coupled with additional circumstantial evidence, . . . can

3    support an inference of retaliation[.]" (Resp. at 16.)  To support this position, Mr. Levy

4    cites *Villiarimo v. Aloha Island Air, Inc.*, 113 F.3d 212, 226 (9th Cir. 1997).  Again,

5    however, Mr. Levy provides an incorrect citation and purports to quote language that

6    does not appear in the actual opinion.  *See generally Villiarimo*, 281 F.3d at 1054.  In the

7    absence of controlling authority or sufficient evidence, the court rejects Mr. Levy's

8    contention that Google's purported continuation of its partnership with VSI is

9    demonstrative of pretext.

10        2.    Structural Defects in Google's RIF Process

11    Second, Mr. Levy asserts that purported "structural defects" in Google's process

12    for implementing layoffs "reveal pretext[.]" (Resp. at 18.)  Mr. Levy contends that the

13    fact that there is no evidence in the record showing that Google planned a RIF before Mr.

14    Levy filed his financial fraud complaint shows that "the RIF was created post-hoc to

15    justify retaliation." (*Id*. at 19.)  Purporting to cite *Springer v. Boeing*, 138 Wash. App.

16    248 (1997), Mr. Levy asserts that "[t]he absence of contemporaneous documentation of

17    decisions is probative of pretext; such documentation is normally maintained by prudent

18    employers." (*Id*. at 18.)  The court, however, is unable to locate *Springer* in any legal

19    database.  In any event, Mr. Levy may not simply point to the absence of evidence in the

20

21    _____

Resp. at 30-31.)  The court need not, and will not, "scour the record in search of a genuine issue

22    of triable fact" as relates to Mr. Levy's claim for wrongful termination. *Keenan v. Allan*, 91 F.3d
1275, 1279 (9th Cir. 1996).

1    record to create a genuine issue of fact when he has the burden of proof.  *Mackey v.*

2    *Home Depot USA, Inc.*, 459 P.3d 371, 386 (Wash. Ct. App. 2020) (stating that in the final

3    step of the burden shifting framework governing wrongful termination, the employee

4    must "produce sufficient evidence to establish a question of fact as to pretext[.]").

5    Furthermore, to the extent Mr. Levy suggests that Google laid off 12,000 employees as a

6    pretext for terminating his employment, this theory is not supported by any facts in the

7    record.  (*See generally* Dkt.)

8         Mr. Levy also argues that the lack of "written criteria, rubric, or methodology . . .

9    to explain how skill set ratings were determined" is evidence of pretext.  (Resp. at 19.)

10   Again, however, Mr. Levy cites no authority or evidence to support his position.  To the

11   contrary, Google produced the criteria it used to select employees for its RIF, namely

12   location, historic performance, and skill set, and explained through testimony that Google

13   prioritized retaining employees with a skill set that was in "high demand" or "difficult to

14   replace[.]"  (*See* Corrales Depo. at 114; *see also* RIF Criteria.)  Mr. Levy identifies no

15   facts in the record that suggest he had a skill set that was sufficiently in high demand or

16   difficult to replace to justify his retention.  (*See generally* Resp.)  Thus, in the absence of

17   controlling authority or sufficient evidence, the court rejects Mr. Levy's contention that

18   any alleged structural defects in the RIF process are demonstrative of pretext.

19        3.    December 7, 2022 Check-In

20        Mr. Levy next asserts that Google's evidence of a December 7, 2022 support

21   check-in meeting was fabricated and, as a result, the court should draw the inference that

22   "Google's entire defense is pretextual."  (Resp. at 21 (citing *Reeves v. Sanderson*

ORDER - 14

1    *Plumbing Prods., Inc.*, 530 U.S. 133, 145 (2000).)  Although the parties dispute whether

2    Mr. Natarajan indeed met with Mr. Levy on December 7, 2022, this dispute is not

3    sufficient to establish a genuine issue of material fact because whether the check-in

4    occurred is not material to the outcome of the case.  *See Anderson*, 477 U.S. at 248

5    (limiting the designation of a fact as "material" only to those facts that may affect the

6    outcome of the case.  In any event, Mr. Levy has not provided any evidence showing

7    that any communication with Mr. Natarajan played a role in his termination, and the court

8    finds that it is manifestly unreasonable to draw the inference that Google's "entire

9    defense is pretextual" from a dispute about whether the December 7 meeting took place.

10        4.    Subordinate Animus

11        Finally, Mr. Levy contends, under a "cat's paw" theory of liability, that Mr. Ward

12    was biased against him and influenced his supervisor, Chief Operating Officer Ana

13    Corrales, to select Mr. Levy for termination.  (*See* Resp. at 23 (citing *Staub v. Proctor*

14    *Hosp.*, 562 U.S. 411, 412 (2011)).)  Under this theory, "a biased subordinate, who lacks

15    decision making power, uses the formal decisionmaker as a dupe in a deliberate scheme

16    to trigger a discriminatory employment action."  *City of Vancouver v. State Pub. Emp.*

17    *Rels. Comm'n*, 325 P.3d 213, 222 (Wash. 2014) (cleaned up).[8]

18

19

---

20    [8] Mr. Levy relies on *Bahrampour v. Lampert*, 356 F.3d 969, 983 (9th Cir. 2004), for the
proposition that an "employer cannot isolate knowledge of wrongdoing from the decision-

21    maker." (Resp. at 25.)  *Bahrampour*, however, is not an employment case, and the language Mr.
Levy purports to quote appears nowhere in that decision.  *See generally Bahrampour*, 356 F.3d

22    969 (reviewing a grant of summary judgment in a prisoner civil rights case under 42 U.S.C. §
1983).

1    Although the record supports Mr. Levy's contention that Mr. Ward was his

2    supervisor at Google and attempted to give him a "Not Enough Impact" rating in late

3    2022, he provides no competent evidence that Mr. Ward was biased against him or that

4    Mr. Ward's attempt to rate him as such resulted in his termination.  (*See generally* Dkt.;

5    *see* Resp. at 23 (alleging that Mr. Ward "[p]articipated in the RIF evaluation, knowing

6    his rating would determine [Mr. Levy's] fate"); *see also* Not Enough Impact Emails.)  To

7    the contrary, Google produced evidence that Mr. Ward's rating played no role in Mr.

8    Levy's termination.  (*See* Ward Depo. at 144-46; *see also* Corrales Depo. at 122.)

9    Consequently, the court rejects Mr. Levy's subordinate animus theory of liability.

10    Ultimately, Mr. Levy does not point to competent evidence of the circumstances

11    that he asserts give rise to an inference of retaliation.  (*See* Resp. at 16, 25 (asserting that

12    work continuation, structural defects in the RIF process, fabricated documentation, and

13    subordinate animus, along with temporal proximity, give rise to an inference of

14    retaliation).)  Because he fails to provide any evidence that his termination was

15    pretextual, the court concludes that Google has shown that it is entitled to summary

16    judgment on Mr. Levy's claim for wrongful termination.

17    **D.    Interference with Paid Family Medical Leave**

18    Finally, Google moves for summary judgment on Mr. Levy's claim that Google's

19    conduct interfered with his ability to exercise his WPFMLA rights.  (*See* MSJ at 20

20    (citing Compl. ¶¶ 4.18, 4.19).)  Google contends that Mr. Levy's claim fails as a matter

21    of law because he cannot show that "Google used [his] leave as a negative factor in any

22    adverse employment decision, including [Mr. Levy's] termination."  (*Id.*)  In response,

1    Mr. Levy argues that the fact that Google notified him of his termination while he was on

2    approved WPFMLA leave constitutes "per se interference[.]"  (Resp. at 27.)  The court

3    concludes that Google has shown that it is entitled to summary judgment on Mr. Levy's

4    claim for interference with his paid family medical leave.

5         Under the WPFMLA, it is unlawful for an employer to: "(a) [i]nterfere with,

6    restrain, or deny the exercise of, or the attempt to exercise, any valid right provided under

7    [the WPFMLA]; or (b) [d]ischarge or in any other manner discriminate against any

8    employee for opposing any practice made unlawful by [the WPFMLA]."  RCW

9    50A.40.010.  Because the WPFMLA "mirrors its federal counterpart," courts "construe

10   its provisions in a manner consistent with similar provisions of the [Family and Medical

11   Leave Act of 1993 ("FMLA").]"  *Mooney v. Roller Bearing Co. of Am., Inc.*, No. C20-

12   1030LK, 2022 WL 1014904, at *21 (W.D. Wash. Apr. 5, 2022), *amended on*

13   *reconsideration on other grounds*, No. C20-01030LK, 2022 WL 1289600 (W.D. Wash.

14   Apr. 29, 2022) (quoting *Crawford v. JP Morgan Chase NA,* 983 F. Supp. 2d 1264, 1269

15   (W.D. Wash. 2013) (internal quotation marks omitted).  The FMLA, and thus the

16   WPFMLA, provides for two theories of recovery: (1) the interference theory, and (2) the

17   retaliation or discrimination theory.  *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th

18   Cir. 2011).  Mr. Levy raises claims for both interference and retaliation under the

19   WPFMLA.  (*See* Compl. ¶ 4.19.)

20        1.    Interference

21        The elements of an interference claim under the FMLA, and thus the WPFMLA,

22   are (1) an entitlement to FMLA leave; (2) an adverse action by the plaintiff's employer,

1    which interfered with the plaintiff's right to take leave; and (3) a showing that the

2    employer's adverse action was related to the exercise, or attempt to exercise, FMLA

3    rights. *Wilmuth v. Amazon.com Inc.*, No. C23-1774JNW, 2024 WL 5088337, at *8

4    (W.D. Wash. Dec. 12, 2024) (citing *Martinez Patterson v. AT&T Servs. Inc.*, No. C18-

5    1180RSM, 2021 WL 3617179, at *11 (W.D. Wash. Aug. 16, 2021)); *see* RCW

6    50A.40.010(1)(a).  The term "interference" includes "not only denial of FMLA rights, but

7    also instances where an employer discouraged an employee from using FMLA leave,

8    retaliated against an employee for exercising or attempting to exercise FMLA rights, or

9    'otherwise caused the employee to suffer an adverse employment action as a consequence

10   of taking FMLA leave.'" *Id.* (quoting *Martinez Patterson*, 2021 WL 3617179, at *11).  If

11   Mr. Levy establishes a *prima facie* interference claim, Google may avoid liability if it had

12   a legitimate reason to terminate Mr. Levy's employment.  *See* WAC 192-700-010(b)

13   (providing that an employee is not entitled to WPFMLA rights if "[t]he employer is able

14   to show that [the] employee would not otherwise have been employed at the time the

15   employee would return to work after the employee's family or medical leave under [the

16   WPFMLA] ends.").

17        The parties do not dispute that (1) Mr. Levy was entitled to take WPFMLA leave

18   and did take such leave from on or about December 13, 2022, until February 14, 2023,

19   (s*ee, e.g.*, GSOC Email), and (2) that Mr. Levy suffered an adverse employment action,

20   (*see* Termination Notice).  Mr. Levy, however, fails to put forward evidence "showing

21   that [Google's termination of his employment] was related to the exercise, or attempt to

22   exercise, [his] FMLA rights[.]"  (*See generally* Dkt; *see also Wilmuth*, 2024 WL

1    5088337, at *8.)  In response, Mr. Levy purportedly cites *Kelley v. Conan*, 555 F.3d 630,

2    634 (8th Cir. 2009) (per se violation when employer explicitly considers protected leave

3    in adverse action) and argues that the fact that he was "terminated while still on

4    [WPFMLA] leave" is "per se interference[.]"  (Resp. at 26-27.)  The court, however, is

5    unable to locate this case in any legal database.  Mr. Levy does not offer any competent

6    evidence for his claim and thus fails to show a genuine dispute as to any material fact.

7    (*See* Resp. at 28 (restating his argument that the RIF was a pretextual justification for

8    terminating his employment)); *see also Celotex Corp.*, 477 U.S. at 323.  Therefore, given

9    the lack of sufficient evidence or controlling law, the court grants Google's motion for

10   summary judgment on Mr. Levy's claim for interference under the WPFMLA.

11        **2.    Retaliation**

12        Under the retaliation theory, the FMLA, and thus the WFMLA, prohibits

13   employers from discharging any individual "for opposing any practice made unlawful by

14   [the FMLA]" or otherwise participating in any proceedings governed by the FMLA.  29

15   C.F.R. § 2615(a)(2), (b); *see* RCW 50A.40.010(1)(b).  If Mr. Levy establishes a *prima*

16   *facie* retaliation claim, and Google subsequently provides a legitimate, nondiscriminatory

17   reason for the adverse employment action, Mr. Levy bears the ultimate of showing that

18   Google's stated reason is pretextual, either by showing that the court should reject

19   Google's stated explanation because it is internally inconsistent or otherwise not

20   believable, or by showing that Google's decision to terminate him was more likely

21   motivated by unlawful discrimination.  *Crawford*, 983 F. Supp.2d at 1269-70.

22

1    Here, Mr. Levy's claim fails because he has not put forth facts showing he was

2    terminated "for opposing any practice made unlawful" by the WPFMLA or otherwise

3    participated in proceedings governed by the statute.  (*See generally* Resp); *see also* 29

4    C.F.R. § 2615(a)(2), (b).  Even if he had provided such facts and made a *prima facie*

5    showing of his claim,  Mr. Levy has not put forward facts showing Google's stated

6    reason for his termination is pretextual.  (*Id*.)  Thus, with respect to his retaliation and

7    discrimination claim under the WPFMLA, Mr. Levy fails to show a genuine dispute as to

8    any material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Consequently, the court concludes

9    that Google has shown that it is entitled to summary judgment on Mr. Levy's claim for

10   interference under the WPFMLA.

11   Because the court grants Google's motion for summary judgment as to all of Mr.

12   Levy's claims, the court denies as moot Google's motion to continue trial date.

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

ORDER - 20

1 
## IV.    CONCLUSION

2      Therefore, for reason of the foregoing, the court GRANTS Google's motion for

3 summary judgment (Dkt. # 32).  Mr. Levy's claim under the Silenced No More Act,

4 RCW 49.44.211(3); claim for wrongful termination in violation of public policy; and

5 claims for interference and retaliation under the Washington Paid Family Medical Leave

6 Act, RCW 50A.15.20 are DISMISSED with prejudice.  The court DENIES as moot

7 Google's motion to continue trial date (Dkt. # 83).

8 

9      Dated this 22nd day of December, 2025.

10 

11                                 JAMES L. ROBART
                                 United States District Judge

12 

13 

14 

15 

16 

17 

18 

19 

20 

21 

22 

ORDER - 21